UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

01 JAN 26 PM 4:00

| | | |
|---|---|---|
| JUDY P. YOUNG, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 00-BU-0834-M |
| PELL CITY BOARD OF EDUCATION, | ) | ENTERED |
| Defendant. | ) | JAN 2 6 2001 |

## MEMORANDUM OPINION

This case is presently before the Court on Defendant's motion for summary judgment. Doc. 20. Plaintiff, Judy P. Young, has sued Defendant Pell City Board of Education, alleging a racially hostile work environment, various instances of racially disparate treatment, and termination because of her race. Defendant has filed a motion for summary judgment asking the Court to dismiss Plaintiff's claims. The Court finds that Defendant's motion for summary judgment (Doc. 20) is due to be granted and Plaintiff's claims are due to be dismissed.

I. **TERMINATION**

Defendant contends that Plaintiff's claim that she was terminated on the basis of her race is barred by her prior sworn statement to Social Security that she was not working for Defendant because she was physically incapable of working.

Page 1 of 12

38

In 1994, Plaintiff, an African-American female, began receiving Social Security disability benefits as a result of injuries she sustained in an automobile accident in 1993. Beginning in Spring 1997, Plaintiff began teaching physical education at Duran Junior High School. Plaintiff, who was not tenured, claims that she was terminated in May 1999 on the basis of her race. Plaintiff contends that she was able to perform all the duties of her position at the time she was terminated. In her deposition, she testified that she had informed Social Security that she was no longer working for Defendant because she was physically incapable of working. She testified as follows:

> Q. Did you give Social Security an explanation as to why you were no longer employed with Pell City?
>
> . . .
>
> A. Yes, I did have to write. They sent me some type of form.
>
> . . .
>
> Q. The question is this: Did you ever explain to Social Security why you were no longer employed with Pell City?
>
> A. I believe I had to. I had to write something on the form.
>
> Q. What explanation did you give Social Security?
>
> A. Verbatim, I don't remember exactly, but hold on. I – dealing with the ball hitting me on my head plus I had to have surgery again with my gallbladder, they removed that and a hernia repair – and it came loose. I won't have surgery again because it's too painful. that's why I have a pot gut. It just popped, okay. And that was from stopping a fight. I believe that's it, you know.
>
> Q. Okay. Did you represent to Social Security the reason

> you're no longer employed here is because you're not physically capable of performing the job?
>
> A.  Right, and the doctor had to back that up.
>
> . . .
>
> Q.  Would you have been physically capable of performing the job?
>
> A.  That would have been August that started, right?
>
> Q.  Right.
>
> A.  Yes, with days off going back and forth to the doctor. . .

Doc. 22, Exh. 1, pp. 84-86.

The Supreme Court has discussed the summary judgment standards to apply in ADA cases, alleging discrimination on the basis of a disability, when a plaintiff has made sworn statements to the Social Security Administration that are inconsistent with her claim of discrimination or an element of her claim of discrimination. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 805-06, 119 S. Ct. 1597, 1603-04, 143 L. Ed. 2d 966 (1999). This Court finds that the standard announced in *Cleveland* applies to Plaintiff's race discrimination claims. The Supreme Court held that a plaintiff must explain the inconsistency between the prior statement to Social Security and her claim before the court in order to withstand summary judgment if the two statements conflict. Specifically, the Court held:

> [I]n some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim. Summary judgment for a defendant is

appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability" – that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case – at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

The lower courts, in somewhat comparable circumstances, have found a similar need for explanation. They have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity. . . . When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. ***To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."***

*Cleveland*, 526 U.S. at 805-06, 119 S. Ct. at 1603-04 (emphasis added).

Plaintiff told Social Security that she was no longer working for Defendant because she was physically incapable of working. She represents to this Court that she was no longer working for Defendant because it terminated her. The only "explanations" offered by Plaintiff to explain the inconsistency between these two

statements are (1) that she was physically capable of performing her job; and (2) that she did not tell Social Security that she was "totally disabled from working continuously since 1993." Doc. 30, p. 3. She does not explain why she told Social Security that she left because she could not physically do the job or why she did not tell Social Security that she was not working for Defendant because she was terminated. As the Supreme Court stated in *Cleveland*, "[P]laintiff cannot simply ignore her SSDI contention that she was [not working because she was too disabled.] To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her [Title VII] claim that she [was terminated by Defendant on the basis of her race.]" *Cleveland*, 526 U.S. at 798; 119 S. Ct. at 1600.

Therefore, the Court finds that a reasonable jury, assuming Plaintiff's statement to Social Security – that she left her job with Defendant because she was not physically capable of working – is true, could not find that Plaintiff was "qualified" to perform her job or that Defendant terminated her; findings required to support a claim of discriminatory termination on the basis of race. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)("Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job.).

Therefore, Plaintiff's race discrimination claim with regard to her termination is due to be dismissed.

## II. RACIALLY HOSTILE WORK ENVIRONMENT & DISPARATE TREATMENT CLAIMS

Plaintiff lists the following acts of alleged racial harassment and disparate treatment:

1. Katie Rowe, a co-worker, engaged in the following conduct:

   a. twice used the word "N*****" in Plaintiff's presence;

   b. remarked that Plaintiff's grandmother had once cleaned for her;

   c. remarked that "black people" had a harder time learning because their skulls were thicker than white people;

   d. remarked that black girls could not be cheerleaders because they could not jump;

   e. referred to a person with a big behind as having "N***** syndrome;"

   f. during a bake sale, told Plaintiff it was time for her to put on her Aunt Jemima apron and make cookies;

   g. referred to black people as "you people;"

   h. allowed white students to grade black students, but not vice versa;

        i.    told Plaintiff she disapproved of interracial dating;

  2.    The principal told her that a parent had referred to Plaintiff as "N*****."

  3.    Plaintiff's name was left off a memorandum from the athletic director to "all coaches."

  5.    The term "master slave" appeared on a computer when Plaintiff logged on.

  6.    Plaintiff was given old equipment.

  7.    The principal told Plaintiff that she was on "BMT," "black man's time;"

  8.    Plaintiff had to sweep the floor while the white physical education teachers did not have to sweep the floor;

  9.    Plaintiff did not get a shirt that some parents had provided other coaches;

  10.    The athletic director for the school board asked to see her coaching certificate because, Plaintiff believes, he thought she was not qualified to coach;

  11.    After she complained about unequal treatment by the athletic director, he began giving her "dirty looks, winking at her, and calling her "Babe."

  12.    Plaintiff's games were scheduled without her being

consulted and were changed excessively.

      13.    When Plaintiff complained about discrimination, the principal told her to "get over it."

      14.    The assistant principal ignored Plaintiff's complaints and responded to Rowe's complaints.

      15.    No substitute was provided to assist Plaintiff when Rowe was absent.

Doc. 30, pp. 17-19.

### A. RACIALLY HOSTILE WORK ENVIRONMENT

The Court has reviewed Plaintiff's allegations and finds that these incidents are not extreme enough to rise to the level of a hostile or abusive working environment.

To establish a claim for hostile environment racial harassment an employee must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome [racial] harassment . . .; (3) that the harassment must have been based on the [race] of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000)(citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999)). In *Gupta*, the Eleventh Circuit held:

> The fourth element – that the conduct complained of was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment" – is the element that tests the mettle of most [racial] harassment claims. Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that Title VII does not become a mere "general civility code." See *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

*Gupta*, 212 F.3d at 583. "Although Title VII's prohibition of [race] discrimination clearly includes [racial] harassment, Title VII is not a federal 'civility code.'" *Mendoza*, 195 F.3d at 1245. "[Racial] harassment constitutes [race] discrimination only when the harassment alters the terms or conditions of employment." *Id.*; see also *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed.2d 295 (1993)("To constitute an actionable hostile environment, conduct must be objectively sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.")(quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986)).

In *Mendoza*, the Eleventh Circuit, sitting en banc, reiterated the standards applicable to hostile environment claims:

> Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component. . . . The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. The environment must be one that a reasonable person would find hostile or abusive and that the victim subjectively perceives to be abusive. Furthermore, the objective severity of harassment should be judged

>from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.
>
>The objective component of this analysis is somewhat fact intensive. Nevertheless, the Supreme Court and this Court have identified the following four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.

Mendoza, 195 F.3d at 1246 (internal quotations and citations omitted). The Supreme Court in Faragher, held, "We have made it clear that conduct must be **extreme** to amount to a change in the terms and conditions of employment . . . ." Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2284, 141 L. Ed. 2d 662 (1998)(citing Carrero v. New York City Housing Auth., 890 F.2d 569, 577-78 (2d Cir. 1989); Moylan v. Maries County, 792 F.2d 746, 749-50 (8th Cir, 1986))(emphasis added).

The incidents of harassment, while unquestionably offensive and unpleasant, are not extreme enough to constitute a hostile and abusive working environment. Moreover, Plaintiff has not presented evidence that the harassment was so severe of pervasive as to alter the terms, conditions, or privileges of her employment. Therefore, Defendant's motion for summary judgment as to Plaintiff's racial

harassment/hostile environment claim is due to be granted.

### B. DISPARATE TREATMENT

Plaintiff alleges, generally, that she was a victim of disparate treatment and lists numerous incidents. "Whether an action is sufficient to constitute an adverse employment action for purposes of a [discrimination] claim must be determined on a case-by-case basis, using both a subjective and an objective standard." *Gupta*, 212 F.3d at 587 (citations omitted). An "adverse action" is an employment decision that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Id.* (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir. 1997)). Although perhaps disconcerting and frustrating to Plaintiff, the actions alleged herein had no significant effect on the terms, conditions, or privileges of her employment and, thus, are not actionable adverse job actions.

Therefore, Defendant's motion for summary judgment is due to be granted on Plaintiff's "disparate treatment" claims.

### III. RETALIATION

On the last page of her argument, Plaintiff contends, "Plaintiff believes the evidence is sufficient to show that she was subjected to disparate treatment and a racially hostile work environment, and was ***retaliated*** against when she complained, to the point of losing her job." Doc. 30, p. 21 (emphasis added). However, neither

Plaintiff's EEOC charge nor her complaint contain any allegation of retaliation. The Court will not allow Plaintiff to assert such claim at this stage of the proceedings.

## CONCLUSION

For the reasons set forth above, the Court finds that Defendant's Motion for Summary Judgment (Doc. 20), as to all of Plaintiff's claims, is due to be granted. The Court finds no existing disputed issue of material fact and that Defendant is entitled to judgment as a matter of law.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion granting summary judgment in favor of Defendant on all claims of Plaintiff.

DONE this 26th day of January, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE